## Morton G. Bunnell v. Harry Rosenberg.

### Gen. No. 12,383.

1. BILL OF EXCEPTIONS—*when absence of seal cannot be availed of.*
Where the absence of the seal from the bill of exceptions has been corrected by amendment made in the lower court and certified to the Appellate Court, the defect is fully cured.

2. PEREMPTORY INSTRUCTION—*when exception to giving of, sufficient.*
An exception to the court's ruling upon a motion for a peremptory instruction is a sufficient exception to the peremptory instruction itself.

3. PEREMPTORY INSTRUCTION—*what not within province of court in considering motion for.* It is not within the province of the judge, on such a motion, to weigh the evidence and ascertain where the preponderance is. ·

4. PEREMPTORY INSTRUCTION—*when should be given, when not.* If it is not proper peremptorily to instruct at the close of the plaintiff's evidence, it is not proper so to instruct at the close of all the evidence, but if it was proper to have so instructed at the close of the plaintiff's evidence, a second motion for such an instruction made at the close of all the evidence should be allowed, if the defendant's evidence has added nothing to that of the plaintiff.

5. CONSIDERATION—*what not sufficient, to support agreement.* A promise of forbearance by which the promisor suffers nothing, is not such a consideration as will support an agreement and render it a valid enforceable contract.

Action of assumpsit. Appeal from the Circuit Court of Cook County; the Hon. LOCKWOOD HONORE, Judge, presiding. Heard in this court at the March term, 1905. Affirmed. Opinion filed April 19, 1906. ·

C. A. WINSTON, for appellant.

H. R. STEWART and ARNOTT STUBBLEFIELD, for appellee.

Mr. JUSTICE BROWN delivered the opinion of the court.

In this case the appellant here was plaintiff in the Circuit Court. He sued the appellee, the defendant below, in an action of assumpsit, alleging in the first count of his declaration that the defendant, in consideration that the plaintiff would postpone and defer action on a certain claim which he, the plaintiff, had against V. J. Barlow and W. R. McDonald, and would not take action to enforce said

Bunnell v. Rosenberg.

claim until the defendant should so direct, promised to see that the plaintiff was protected in his said claim and received the full amount of certain stock in a mining company claimed by him from Barlow and McDonald, or its value in money.   Plaintiff says he performed the consideration, but that the defendant violated his promise and has neglected to take the necessary steps to secure for the plaintiff the stock or its value in money.

In the second count of his declaration the plaintiff set up that he was about to sue Barlow and McDonald for the enforcement of a claim for a one-third interest in 416,500 shares of the capital stock of the Ures Consolidated Mining Company, and that in consideration that he, the plaintiff, would postpone and defer such action for the enforcement of this claim until the defendant should secure an adjustment and settlement "of his claim" (apparently referring to a previous statement in the count that McDonald had sued defendant Rosenberg for a return of certain stock in the same company) and would remove his (the plaintiff's) case from the hands of one Smyser, an attorney, and place it in the hands of defendant's attorneys, the defendant undertook and promised the plaintiff " to be accountable to the plaintiff for the entire amount of his claim," and "that he would not adjust or settle his (the defendant's) claim until the plaintiff's claim should be settled."   Plaintiff says he fulfilled his part of the bargain and defendant defaulted on his and " did adjust and settle his claim against the said McDonald without having in the first place taken any step or made any demand or made any effort in the said plaintiff's behalf."

In a third count of his declaration the plaintiff alleges the broken promises of the defendant in consideration of the action of the plaintiff in deferring action, etc., to be not to "settle his (the defendant's) claim against McDonald without first having secured a settlement of the plaintiff's claim against Barlow and McDonald," and "to see that the plaintiff secured a full satisfaction of his claim," and " to advance all the necessary funds attendant upon securing a settlement of the plaintiff's claim."

To these counts the plaintiff added the common counts in *indebitatus assumpsit.* He afterwards secured an attachment in aid of his suit and garnished the Chicago Title & Trust Company, which answered that it had $6,789.25 to the credit of the defendant in its hands.

A demurrer to the declaration filed by the defendant was afterwards withdrawn by him, and the general issue and two pleas of the Statute of Frauds were filed, the latter pleas asserting that each and every of the supposed causes of action was a special promise to answer for the debt of other persons, and that no memorandum of such promise was signed by the defendant or by his authority.

A demurrer filed by the plaintiff to the pleas of the Statute of Frauds was sustained by the court, and the cause went to trial before a jury January 4, 1905, on the general issue. At the conclusion of the plaintiff's evidence the defendant made a motion to exclude all the evidence from the jury, another motion to strike from the declaration the first and third counts thereof on account of variance, and for an instruction to the jury to find the issues for the defendant; all of which motions were denied. After the defendant had proceeded with his case, however, and at the conclusion of all the evidence, a motion was again made by the defendant for an instruction to the jury to find the issues for the defendant. It was granted by the court, and such instruction given, and a verdict returned in accordance therewith.

After a motion for a new trial had been made and denied, judgment was entered upon the verdict for the defendant against the plaintiff, and the plaintiff appealed to this court. He has made here various assignments of error, arguing, however, only those which attack the rightfulness of the ruling of the trial judge which took the case from the jury.

The appellee gives much space in his brief and argument to the proposition that the bill of exceptions now before us is not sealed and can not be considered. There is no merit in this contention. The bill of exceptions was amended

below, by supplying a seal, and a diminution of record being suggested, by our leave the amendment was certified here. The last page of the bill of exceptions stands for us now as ·it appears in the supplementary transcript of record, not as it did in the original transcript.

The appellee makes another objection to the consideration of the merits of the controversy. He says that the record does not show an exception to the peremptory instruction of the court. We think it does. The court ruled on the motion to give the instruction and allowed it. To that ruling defendant excepted, and that is sufficient.

We have considered the case on the merits, therefore. On such consideration, however, we see no reason for disturbing the judgment. According to the rule stated in Simmons v. Chicago & Tomah Railroad Company, 110 Ill. 340, which, as repeated in Offutt v. Columbian Exposition Co., 175 Ill. 472, the appellant quotes as furnishing the proper test for the case at bar, we think there could be no doubt whatever of the correctness of the ruling of the trial judge.

We deem the evidence, given at the trial with all inference that the jury could justifiably draw from it, so insufficient to support a verdict for the plaintiff that such verdict, if returned, must have been set aside. This was the view of the trial judge also, who, according to the record, granted the motion to instruct the jury peremptorily, because he "could not possibly allow a verdict to stand if it was brought in."

But we cannot use this test, even though suggested by the appellant himself.

In Woodman v. The Illinois Trust & Savings Bank, 211 Ill. 578, the Supreme Court says that while expressions in Simmons v. Chicago & Tomah Railroad Co. are " capable of being understood as authorizing the court to withdraw a case from the jury, if, upon a consideration of all the evidence, it is convinced a new trial would necessarily have to be granted if a verdict should be returned against the party asking the instruction," this is not the correct rule. " The

real question in every such case," it says; " is not whether a new trial will have to be granted or not, but whether there is any evidence on the part of plaintiff or defendant tending to support each and every material allegation of the declaration or plea." It quotes with approval in the same opinion from Frazer v. Howe, 106 Ill. 153, as follows: " It is not within the province of the judge on such a motion to weigh the evidence and ascertain where the preponderance is. This function is limited strictly to determining whether there is or is not evidence legally tending to prove the fact affirmed—*i. e.* evidence from which, if credited, it may reasonably be inferred in legal contemplation the fact affirmed exists, laying entirely out of view the effect of all modifying or countervailing evidence."

Under this rule it must, of course, be true that it will not be right by a peremptory instruction for the defendant to take a case from the jury at the end of all the evidence, where it would not have been right to do so at the close of the plaintiff's evidence. But should a motion which ought to have been granted at the close of plaintiff's evidence be then denied, there is no reason why it should not be renewed at the close of all the evidence, and if the conditions still continue to exist which made it erroneous to deny it in the first instance—that is, if the defendant's evidence has added nothing to the plaintiff's case—it would be a repetition of the error to deny it again.

We have examined the evidence in this cause, not under the rule suggested by appellant, but under the more severe one indicated by the Woodman case. Even under that rule, however, we think the trial court was right.

It is held in Frazer v. Howe, *supra*, that if any essential element is wanting in the plaintiff's case, it may properly be taken from the jury. In the case at bar there is, in our opinion, such an essential element lacking. It is the proof of the existence of any actual legitimate indebtedness from McDonald to Bunnell, or of any valid claim on the part of Bunnell against McDonald for anything.

The "agreement" between Bunnell and McDonald and Barlow, if it may be called an agreement, is this:

Bunnell v. Rosenberg.

" Memorandum of Agreement. This agreement made and entered into by and between the undersigned parties for the purpose of disposing of 416,500 shares of the stock of the Ures Consolidated Mining Company controlled by W. R. McDonald, with the full knowledge that when $4,-900 has been paid over to the said W. R. McDonald, or his assigns, that whatever remains of the said 416,500 shares will be divided equally between the parties hereto.

It is further agreed and understood that the minimum price fixed for the sale of this stock shall be three cents a share.

In witness whereof the said parties hereunto set their hands and seals this 7th day of April, A. D. 1903.

M. G. BUNNELL,    (SEAL)
VERNON J. BARLOW,    (SEAL)
W. R. McDONALD.    (SEAL)"

This document by itself certainly means nothing. Counsel for appellant apparently treat it as an agreement between the parties to fix a value of three cents a share on the stock mentioned, and that Bunnell certainly, and perhaps the others, should attempt to sell enough of the stock at that rate or better, to raise $4,900, which should go to McDonald, and that then whatever remained was to be divided up. But it says no such thing. To so regard it, viewing it only by its own light, is to guess at a meaning without much justification. Nor can we say that the extremely indefinite testimony of the plaintiff, even if it be competent on the theory that the paper may be explained or supplemented by it, has added any certainty to its meaning. It did not explain what was to be sold, nor who was to sell it, nor what the consideration was for the agreement, nor what Barlow had to do with it, nor at what price Bunnell did sell or try to sell any stock, nor that $4,900 was at any time paid over to McDonald by anybody out of this stock or otherwise. Indeed, it would seem to negative this last proposition.

. It does not seem to us to appear by any evidence that there was any sale to Rosenberg of any of this stock through Bunnell, and certainly no evidence shows that there was stock sold to Rosenberg through Bunnell at three cents

a share or better.   There was, therefore, in our opinion, no proof of any valid claim by Bunnell against McDonald. Appellant seeks to avoid the effect of this by assuming that Rosenberg and Bunnell made an independent agreement, fixing upon a definite amount as the valid claim of Bunnell against McDonald, and agreeing that it should be paid by Rosenberg.   It is undoubtedly true, as conceded by appellee, that such an agreement, made on good consideration, concerning a determinate claim, would be enforceable without reference to the Statute of Frauds.   The vague testimony of Bunnell, however, is very far from establishing any such agreement or any such determination.   There was no value even for the stock proven.   The alleged value, according to the testimony, ranged from one cent a share, at which Rosenberg apparently bought (under certain unexplained conditions), to fifty cents a share that somebody thought could be got for it in the proper lots and the proper market.

Nor was there proof of any promise to pay any claim made on any consideration.   The only consideration alleged in Bunnell's testimony, taking it at the very best, for any promise of Rosenberg to take care of Bunnell's claim, was the forbearing of a suit for an indefinite claim.   It does not appear that by so forbearing, if he did forbear, Bunnell lost anything.   It does not appear that McDonald was not wholly insolvent at all times, so that a judgment would be worthless against him; nor (which is perhaps more to the point) that he is not now solvent, so that the same suit which the plaintiff once forbore might now be effectively brought, if it be sustainable.

Moreover, the only promise of Rosenberg that the testimony of Bunnell really tends to prove as given for this consideration, is a promise not to settle his own claim against McDonald without securing a settlement of Bunnell's claim against McDonald.   But it appears that the litigation between McDonald and Rosenberg was a suit by McDonald against Rosenberg, and not *vice versa*.   It does not appear that by settlement of such a suit McDonald is

in any way worse off or less able to respond to Bunnell, if Bunnell has a valid claim against him. It does not appear, therefore, that Bunnell has lost anything or is likely to lose anything by the forbearance of which he testifies. His agreement being thus a mere promise concerning the time of bringing an action, by which promise he suffered nothing, can hardly furnish any consideration for the appellee's alleged promise (which appellant asserts and appellee denies) not to settle his own claim except on certain conditions.

For the same reason, if this promise was made by the appellee and broken, there was no damage to Bunnell thereby, shown by the testimony, and we should hesitate to send a cause back for another trial when nominal damages only could be recovered at the very best, if all the plaintiff's theories of his case were sustained, and when there was in the testimony but a scintilla of evidence to sustain any one of them. This consideration is not important, however, for, as we have indicated, an essential element of any sufficient case for the plaintiff was wanting in the evidence.

The judgment is affirmed.

*Affirmed.*