## Commonwealth v. Bain.

(Decided October 27, 1931.)

J. W. CAMMACK, Attorney General, and JAMES M. GILBERT, Assistant Attorney General, for appellant.

J. H. TAYLOR for appellee.

OPINION OF THE COURT BY CREAL, COMMISSIONER— Reversing.

Joe Bain was indicted by the grand jury of Bell county for the crime of unlawfully and fraudulently converting money and property of the city of Pineville to his own use or to the use of another. A demurrer was interposed to the indictment which was sustained by the court, and the commonwealth has prosecuted this appeal under section 337 of the Criminal Code of Practice.

The indictment, in substance, alleges that, at the time of the commission of the alleged offense, Allie Bain was the duly and legally elected, qualified, and acting tax collector of the city of Pineville; that the tax bills due the city from taxpayers had been duly and legally certified and delivered to her for collection, and had been delivered by her to the care, custody, and control of Joe Bain for collection on her behalf and on behalf of the city; that among these bills was one for $372.84 against Pappas & Elingo, which sum was collected from them by Joe Bain and from which sum so collected he fraudulently appropriated, concealed, used, and converted to his own use or to the use of another the sum of $44.40 in lawful money of the United States; that the funds and money collected by him were the property of the city and had been intrusted to his care, custody, and keeping by virtue of his relation of confidence, agency, and service to the city and to Allie Bain; he at the time being under the "duty and trust" to keep, account for, and pay said money and funds to the city.

Manifestly, this indictment was intended to charge Joe Bain with the crime, defined by section 1205 of the Kentucky Statutes which reads as follows:

"If any person having the custody, control or distinct possession of any money, bank notes, county, city or town bonds or Kentucky State bonds, or United States bonds or treasury notes, legal tender notes, promissory notes, property, effects, or other movable thing of value belonging to or for the

use of the state, or of any county or district of a county, or of any municipal corporation, and under any trust or duty to keep, return, deliver, cancel, destroy or specifically apply the same, or any part thereof, shall, in violation of such trust or duty, wilfully misapply, misappropriate, conceal, use, loan, or otherwise wrongfully and fraudulently dispose of such money, bank notes, county, city or town bonds, state bonds, United States bonds or treasury notes, legal tender notes, promissory notes, property, effects or other movable thing of value or any part thereof, for his own purposes or use of another, with intent to deprive the owner or authority of the same, or of any part thereof, for the benefit of the wrongdoer or of any other person, such person so offending shall be confined in the penitentiary not less than one nor more than ten years.''

The basis of the lower court's action in sustaining the demurrer is not disclosed by the record, but we assume that it was sustained on the theory that since the indictment discloses that Allie Bain and not the accused was the tax collector, and since the latter did not occupy a fiduciary or trust relation to the city, he therefore was not "under any duty or trust to keep, return or deliver" funds collected by him for the tax collector or the city.

In determining the correctness of the lower court's action, a twofold question is presented. Whether, in collecting the money in question, appellee was under such a "trust or duty" as to make him amenable to the provisions of section 1205, supra, and, if not, whether the indictment is good under the provisions of section 1206 of the Statutes which is a degree of the offense defined in section 1205, and which reads as follows:

"Any person who shall improperly, or without lawful authority, receive any of the things mentioned in the preceding section, and shall wilfully and fraudulently misapply or misappropriate the same, shall be confined in the penitentiary not less than one nor more than ten years.''

In receiving the tax bills of the city and collecting funds from taxpayers on such bills, as charged in the indictment, appellee either voluntarily assumed and placed himself in a position of "trust or duty" with relation to the city, and thereby subjected himself to prosecu-

tion under section 1205; or he without lawful authority received the money in payment of tax bills of the city, and thereby subjected himself to prosecution under section 1206.

One who assumes a position of authority and trust in collecting funds for another certainly should not be heard to urge his want of authority when charged with embezzlement of such funds.

In the leading case of State v. Spaulding, 24 Kan. 1, the court said:

> "A man may not say: 'I have the right to receive money,' and receive it, and then, when challenged for its receipt or embezzlement, avoid liability by saying, 'I had no right to receive it.' He has voluntarily assumed a position, the responsibilities, of which he may not avoid."

In State v. Gross, 91 Ohio St. 161, 110 N. E. 466, 467 it is said:

> ". . . The overwhelming weight of authority, common sense, and reason call for the application of the doctrine known as estoppel against the defendant. We too often lose sight of the primary purpose of criminal statutes. They are enacted to protect the public by prohibiting crime and punishing criminals. If a man is agent enough to get possession of money for and in the name of his principal, he is also agent enough to be convicted of embezzlement as such agent."

And in State v. Pohlmeyer, 59 Ohio St. 491, 52 N. E. 1027, it was held that the rule applying in civil cases to one who receives money or other things of value, in the assumed exercise of authority, applies also in criminal prosecution. In the case of People v. Treadwell, 69 Cal. 226, 10 P. 502, 508, the court recognized the same doctrine, and, in the course of the opinion said with reference to the general rule:

> "As Lord Mansfield put it to a party to an action who attempted to deny the assumed authority under which he had done an act attended with fraud and falsehood: 'No; it shall be as you represent it to be. No man shall set up his own iniquity as a defense any more than as a cause of action.' "

See, also, State v. Dawe, 31 Idaho, 796, 177 P. 393; State v. Costin, 89 N. C. 511; Campbell v. State, 35 Ohio St. 70; Bishop Common Law (7th Ed.), Vol. 2, page 364.

There appears to be no good reason why one assuming a position of confidence and trust and who by virtue or force of his assumed position comes into possession of money or property should not be held to such position on a trial for embezzlement or misappropriation of the money or property so coming into his hands. Section 1205 applies where the accused legally comes into custody, control, or possession of money or property under a duty or trust; but section 1206 applies where the accused improperly or without lawful authority comes into possession of the things mentioned in the former section.

Under the allegations of the indictment, a conviction under one or the other of the sections would be warranted, and it therefore follows that the lower court erred in sustaining the demurrer. The judgment must be, and is, reversed.